UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION** |
| **v.** | ) | **NO. 21-40019-TSH** |
| | ) | |
| **AHMED SULLAY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO SUPPRESS EVIDENCE (Docket No. 32)**
**February 9, 2022**

**HILLMAN, D.J.**

The United States of America (the "Government") charged Ahmed Sullay ("Defendant") in a single count indictment with being a felon in possession of a firearm. Defendant moves to suppress all evidence obtained from the vehicle he drove at the time of his arrest on November 18, 2020. For the following reasons, the Court **_denies_** the motion to suppress.

**Background**

On November 18, 2020, at approximately 6:45 p.m., Worcester Police Officer Thomas Bishop drove his police vehicle southbound on Southbridge Street in Worcester, in the vicinity of George's Coney Island restaurant. As Officer Bishop approached the intersection of Hermon and Southbridge Streets, he observed a Kia sedan approaching Southbridge Street going in the wrong direction on a one-way section of Francis J. McGrath Boulevard. As this is a common occurrence at this intersection, Officer Bishop activated his emergency lights in order to warn the Kia driver.

Presumably after seeing Officer Bishop's emergency lights, the Defendant stopped, quickly reversed his vehicle, and attempted to flee. The Defendant lost control of his vehicle and crashed into a traffic sign pole, disabling the vehicle. Defendant exited the Kia and ran away on foot, leaving a passenger in the front seat, the keys in the ignition and the vehicle running.

The Defendant first ran toward Francis J. McGrath Boulevard and then around Worcester Fire Station #2. At this time, Officer Bishop was pursuing the Defendant in his cruiser and observed that Defendant ran with his arms and hands tucked to his front, not with his arms naturally moving at his sides. Based on his training and experience, Officer Bishop believed that the Defendant was holding something he wished to conceal. The Defendant left the vicinity of the fire station and ran next toward Southbridge Street in the direction of Premiere Car Wash, on the corner of Southbridge and Hermon Streets. Officer Bishop put out a call that he was pursuing a black male, wearing gray sweatpants, and a white hooded sweatshirt.

Defendant ran around the car wash several times, then ran up Hermon Street in the direction of Beacon Street. Officer Bishop continued to pursue Defendant in his cruiser. According to Officer Bishop, about halfway up Hermon Street, Defendant discarded his sweatshirt, which was later recovered by officers.

After losing sight of Defendant, Officer Bishop returned to the vehicle and spoke to the passenger, still seated in the vehicle. The individual indicated to Officer Bishop that she did not know the driver's name. Officer Bishop retrieved the abandoned vehicle's registration to determine the identity of the vehicle's owner. While looking for the Kia's registration, Officer Bishop observed a jewelry store receipt bearing Defendant's name.

At around the same time, Worcester Police Officer Anthony Correa responded to Officer Bishop's location. As Officer Correa traveled east on Hermon Street, he saw a male in his

rearview mirror, wearing shorts and no shirt, run from a darkened alley towards Main Street. Officer Correa reversed his vehicle and headed back in the direction of Main Street. He temporarily lost sight of the person when he turned the corner at Main Street.

When Officer Correa entered the parking lot at 721 Main Street, he noticed a black SUV speed away without headlights and travel eastbound on Hermon Street in the direction of Southbridge Street. Officer Correa activated his emergency lights and attempted to stop the SUV. Defendant, who was wearing only boxer shorts and boots had just stolen the SUV, drove through the stop sign at the intersection of Hermon and Southbridge Street and collided with the passenger side of another vehicle traveling southbound on Southbridge Street.

The owner of the stolen vehicle later told Officer Correa that he left his keys in the ignition of his parked vehicle when he went into a store. When the owner returned to the parking lot, he observed a black male with dreadlocks and no shirt enter his car and drive away. Officer Correa also spoke with another witness who corroborated the owner's physical description of the Defendant.

According to police reports, the Defendant opened the driver's side door, surveyed the crash scene, and again fled on foot. Officer Correa recognized the Defendant to be the same person he had seen on Hermon Street earlier and continued to follow him in his cruiser. The Defendant ultimately stopped running was taken into custody by Officers Correa with assistance from Officer Joseph Atchue.

After Defendant's arrest, Officer Bishop with his K-9 partner, Atlas, and Officers Jolin, Atchue, and Correa retraced Defendant's route. When searching in the vicinity of the car wash, Officers Atchue and Jolin found a loaded 9mm firearm in the lot above the car wash. The Officers retrieved security footage from the Premiere Car Wash. The Defendant is shown by two

separate cameras making a throwing motion from the Premiere Car Wash parking lot below into the parking lot above where the firearm was found.

### Discussion

The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. "To secure the admission of evidence obtained without a warrant, the government must show that the warrantless search fell within one of a handful of narrowly defined exceptions." *United States v. Almonte-Baez,* 857 F. 3d 27, 31 (1st Cir. 2017) (*citing United States v. Romain,* 393 F.3d 63, 68 (1st Cir. 2004)).

In his motion to suppress, the Defendant argues that Officer Bishop was "confronted with an apparently abandoned vehicle" and that his subsequent warrantless search of the glove compartment cannot be justified as either an inventory search or as one incident to arrest. The Government contends that the Defendant failed to establish a reasonable expectation of privacy because he abandoned the vehicle when he exited it and left it behind to avoid being apprehended by police. In his brief, the Defendant does not challenge the fact that after he crashed the vehicle, he fled from it, leaving the keys in the ignition and the vehicle running.

To challenge a search or seizure, "a defendant must have a reasonable expectation of privacy in the area searched or the item seized." *United States v. Bailey*, 2009 WL 524730, at *2 (D.Mass. Feb. 26, 2009). Such expectation, however, "may be forfeited by voluntary acts of abandonment." *United States v. Wilkins*, 451 F. Supp. 3d 222, 227 (D.Mass. 2020); see *Bailey*, 2009 WL 524730, at *2 (noting that "[i]t is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property"). To demonstrate abandonment, the Government must "establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a

reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." *Bailey*, 2009 WL 524730, at *2 (internal quotations omitted). Courts "look at the totality of the circumstances" when conducting this assessment, "but pay particular attention to explicit denials of ownership and to any physical relinquishment of property." *Id*. (internal quotation omitted); *see California v. Hodari D*., 499 U.S. 621, 629 (1991).

Many District and Circuit Courts have held that the Defendant's conduct constitutes abandonment of the vehicle and forfeiture of any expectation of privacy. *U.S. v. Castro-Perez*, 2021 WL 488260, at *4 (D.P.R. Feb. 10, 2021). "It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property." *United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st Cir. 2003) (*citing Abel v. United States*, 362 U.S. 217, 241 (1960)). In the absence of a reasonable expectation of privacy, police may search abandoned property without a warrant. *See United States v. Lewis*, 921 F.2d 1294, 1302 (D.C. Cir. 1990). This is because "[a]bandoned property is not subject to Fourth Amendment protection." *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003) and *United States v. Basinski*, 226 F.3d 829, 836 (2d. Cir 2000) *(both citing Abel,* 362 U.S. at 241 (1960)). "[N]o person can have a reasonable expectation of privacy in an item that he has abandoned." *Basinski*, 226 F.3d at 836 (*citing Hester v. United States*, 265 U.S. 57, 58 (1924); *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996)).

When the Defendant saw the lights from Officer Bishop's vehicle, he fled from the police by reversing the vehicle at a high rate of speed. In doing so, he crashed the vehicle and damaged a street sign. He then opened the door of the vehicle and ran away. At that point, he forfeited any reasonable expectation of privacy in the vehicle. *See United States v. Smith*, 789 F.3d 923, 929

(8th Cir. 2015) (affirming conclusion that suppression was not warranted where defendant "relinquished any legitimate expectation of privacy" when he fled from scene of lawful traffic stop, led officers on high-speed chase, then left inoperable vehicle behind); *United States v. Vasquez,* 635 F.3d 889 (7th Cir. 2011) (upholding denial of motion to suppress because defendant abandoned car after speeding away when police attempted to arrest him and ran away from vehicle after he parked it in a nearby parking lot); *United States v. Pittman,* 411 F.3d 813, 817 (7th Cir. 2005) ("If the driver of a car flees at the approach of the police, this is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and therefore isn't going to reclaim it."); *United States v. Walton*, 538 F.2d 1348, 1354–55 (8th Cir. 1976) (maintaining that a warrantless search and examination of a vehicle did not violate the Fourth Amendment because the defendant had fled from and abandoned the car when a police officer appeared on the scene); *United States v. Edwards,* 441 F.2d 749, 751 (5th Cir. 1971) (holding that the defendant had no reasonable expectation of privacy with respect to his automobile because his "right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot."); *Castro-Perez,* 2021 WL 488260 at *5 (defendant's act of exiting his vehicle and running away evidences his voluntary relinquishment of his privacy interest); *Bailey*, 2009 WL 524730, at *2 ("[W]ith the police in pursuit, Bailey jumped from a moving SUV and fled, leaving the SUV to lurch onto a sidewalk, with the door still open, the engine still running, and the keys in the ignition [...] abandon[ing] the SUV and forfeit[ing] any reasonable expectation of privacy in the SUV."); *United States v. Espinoza-Reynosa*, No. 2020 WL 949118, at *5 (D Minn. Feb. 27, 2020) ("... case law conclusively establishes that Defendant abandoned his vehicle—and any accompanying Fourth Amendment privacy interest in it—after crashing it, leaving it behind, and fleeing on

foot."); *United States v. Magana,* 2007 WL 680784, at *5 (D.Nev. Feb. 28, 2007) (the defendant cannot raise a Fourth Amendment violation because when he abandoned his vehicle, he likewise abandoned his expectation of privacy); *United States v. Lynch,* 290 F. Supp. 2d 490, 497 (M.D. Pa. 2003) (concluding that search was lawful because defendant abandoned his vehicle by "flee[ing] the car on foot, leaving the door wide open and the motor and headlights running" while "police officers in police cars looked on.").

The totality of the circumstances here and the Defendant's actions clearly show his intent to voluntarily relinquish his privacy interest in the vehicle. *See Barlow*, 17 F.3d at 88. Because the Defendant has not shown a reasonable expectation of privacy regarding the searched vehicle, suppression of the evidence is not warranted.

## Conclusion

For the reasons stated above, Defendant's motion to suppress (Docket No. 32) is **denied**.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**